UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

NATHANIEL C. BLACKER,                                    Case No. 1:09-cv-346

        Plaintiff,                                    Beckwith, J.
                                                        Litkovitz, M.J.

vs.

DR. JOHN R. DESMARIAS, *et al.*,

        Defendants.

## REPORT AND RECOMMENDATION[1]

Plaintiff, an inmate at the Southern Ohio Correctional Facility (SOCF) in Lucasville,

Ohio, brings this civil rights action pursuant to 42 U.S.C. § 1983 alleging a violation of his

rights. The remaining defendant in this action is former SOCF physician Vikki Owen, M.D.

Plaintiff alleges that defendant Owen was deliberately indifferent to his serious medical needs in

violation of his constitutional rights. This matter is before the Court on defendant Owen's

motion for summary judgment (Doc. 60), plaintiff's memorandum in opposition thereto (Doc.

64), and defendant's reply memorandum. (Doc. 65).

## I. STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to the court

demonstrates that there is no genuine issue as to any material fact and that the movant is entitled

to summary judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S.

317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving

party must demonstrate the absence of genuine disputes over facts which, under the substantive

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and
Recommendation.

law governing the issue, could affect the outcome of the action. *Celotex Corp.*, 477 U.S. at 323.
In response to a properly supported summary judgment motion, the non-moving party "is
required to present some significant probative evidence which makes it necessary to resolve the
parties' differing versions of the dispute at trial." *Sixty Ivy Street Corp. v. Alexander*, 822 F.2d
1432, 1435 (6th Cir. 1987); *Harris v. Adams*, 873 F.2d 929, 931 (6th Cir. 1989). "[A]fter a
motion for summary judgment has been filed, thereby testing the resisting party's evidence, a
factual issue may not be created by filing an affidavit contradicting [one's own] earlier deposition
testimony." *Davidson & Jones Dev. Co. v. Elmore Dev. Co.*, 921 F.2d 1343, 1352 (6th Cir.
1991).

　　　The trial judge's function is not to weigh the evidence and determine the truth of the
matter, but to determine whether there is a genuine factual issue for trial. *Anderson*, 477 U.S. at
249-50. The trial court need not search the entire record for material issues of fact, *Street v. J.C.
Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989), but must determine "whether the
evidence presents a sufficient disagreement to require submission to a jury or whether it is so
one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

　　　If, after an appropriate time for discovery, the opposing party is unable to demonstrate a
prima facie case, summary judgment is warranted. *Street*, 886 F.2d at 1478 (citing *Celotex* and
*Anderson*). "Where the record taken as a whole could not lead a rational trier of fact to find for
the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Electric Industrial Co. v.
Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## II. FACTS

The evidence in this matter consists of the affidavits of plaintiff and Lisa Bethel, the health care administrator for the Ross Correctional Institution ("RCI")[2], as well as two letters from the Bureau of Medical Services relating to plaintiff's medical concerns. Plaintiff states that he has been prescribed treatment/medications for several years by various physicians for pain, muscle spasms, dry skin, gastric reflux, and allergies. (Doc. 64, Ex. A at ¶4). Plaintiff avers that while he was incarcerated at SOCF, he requested and was denied continuation of such medication for his various medical conditions. (*Id.* at ¶¶ 3, 5). Plaintiff's affidavit states:

> Dr. Vikki Owen knowingly, voluntarily, and intentionally discontinued all of my then prescribed medications on October 9, 2008, and did not examine or prescribe me any treatment/medication for my knee pain.
>
> I suffered with pain, *inter alia*, when I did not have these medication[s] that Dr. Vikki Owen discontinued on October 9, 2008.
>
> Dr. Vikki Owen refused to address and/or prescribe any treatment and/or medication for my serious medical needs/conditions during the time she was the practicing physician at the Southern Ohio Correctional Facility.
>
> I filed several complaints, including but not limited to complaints with, Rhonda Stalnaker, HCA; the State Medical Board; Lienna Mahman, I.I; Mona Parks; Jennifer Clayton, RN, BA, CCHP; Cari Galloro, RN, BSN; amongst others between October 9, 2008 through January 12, 2009.
>
> At the appointment with Dr. Vikki Owen on December 11, 2008, she refused to

---

[2] Ms. Bethel is the custodian of inmate medical files at RCI, where plaintiff was incarcerated at the time he filed the complaint. (Doc. 60, Ex. A at ¶ 4). According to Bethel, these records would include all of the inmate's medical files which were compiled while he resided at other institutions. *Id.* Such files include, *inter alia*, notes on all health problems complained of by the inmate, notes on what transpired and was observed each time the inmate was seen by a member of the medical staff employed by ODRC or a doctor who provided services pursuant to a contract with ODRC, reports of all examinations by medical professionals outside of the institution in which the inmate is confined, and the reports of the initial "intake" examination of the inmate when the inmate first enters the custody and control of ODRC. *Id.*

> address any of my serious medical needs and/or prescribe any treatment for my
> serious medial conditions.
>
> I suffered unduly with pain, muscle spasms, dry cracked skin, and sinus
> congestion, *inter alia*, as a result of Dr. Vikki Owen failing to address and/or treat
> my serious medical needs.

(Doc. 64, Ex. A at ¶¶ 4-10; Exs. B & C).[3]

According to Ms. Bethel, the custodian of records at RCI, plaintiff has a history of lateral

ligament reconstruction on his ankle in 2002, ankle pain and spasms. (Doc. 60, Ex. A at ¶ 9). As

a result, plaintiff has been treated with Baclofen and Motrin since May 18, 2006. (*Id.*).  However,

x-rays and an MRI done in November 2005 of plaintiff's right foot showed no abnormalities.

(*Id.*).

Plaintiff was transferred to SOCF on June 26, 2008, and remained there throughout 2008.

(*Id.* at ¶ 7).  At the time of his transfer, plaintiff had been prescribed Motrin for ankle pain,

Baclofen for ankle spasms, Lidex for dry skin, and antacids for gastric reflux. (*Id.*; Doc. 64, Ex.

A at ¶ 4).  Prior to his transfer to SOCF, plaintiff was seen by Dr. McWeeney who re-ordered

Baclofen, ordered antacids on an as needed basis, and Motrin three times a day. (Doc. 60, Ex. A

at ¶ 8).  The medications were prescribed through July 18, 2008.

In October 2008, plaintiff submitted a Health Care Request Form requesting continuation

of prescribed medications and requesting treatment of his right knee. (Doc. 64, Ex. A at ¶ 3).

---

[3] Exhibit B is an undated letter from Cari Galloro, the Patient Care Resource Manager at the Ohio
Bureau of Medical Services ("BOMS").  The letter states that BOMS received plaintiff's letter regarding
his concerns relating to his pain medication.  Ms. Galloro advises plaintiff to schedule an appointment
with Dr. Owen to discuss his medical conditions.  Exhibit C is a January 12, 2009 follow-up letter from
Jennifer Clayton, the Regional Nurse Administrator at BOMS, relating to plaintiff's complaints that Dr.
Owen is not addressing his medical needs.  Ms. Clayton states that Dr. Owen is no longer the practicing
physician at SOCF, and advises plaintiff to submit a Health Care Request Form in order to arrange a visit
with one of the new providers at SOCF.

Plaintiff was seen by a nurse on October 9, 2008. (Doc. 60, Ex. A at ¶ 10). The nurse requested that Dr. Owen, a physician at SOCF, review plaintiff's chart for possible medication renewal. (*Id.*). Dr. Owen performed a chart review of plaintiff's file that same day, wherein she found no information that indicated that plaintiff had any acute medical problems. (*Id.*). At that time, Dr. Owen found no reason for the renewal of chronic treatment medications and noted prescriptions should only be provided on an as needed basis for acute symptoms only. (*Id.*).

According to SOCF medical records, plaintiff did not make any complaints or request any additional medical care from October 9, 2008 through December 11, 2008. (Doc. 60, Ex. A at ¶ 11). On December 11, 2008, Dr. Owen personally examined plaintiff and noted that his lungs were clear, he had no abdominal problems, and his gait was normal. (*Id.*). Because his medical records did not indicate that he had any significant medical problems as of December 11, 2008, Dr. Owen did not renew his medications at that time. (*Id.*).

Ms. Bethel further avers that there are occasions when physicians discontinue medications based upon a chart review. (*Id.* at ¶12).

### III. DELIBERATE INDIFFERENCE STANDARD

In order to establish his claim for relief under 42 U.S.C. § 1983[4] for a denial of medical care, plaintiff must present evidence showing "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). *See also Spears v. Ruth*, 589 F.3d 249, 254 (6th Cir. 2009). A prisoner who is allowed to suffer

---

[4] For purposes of the motion for summary judgment, the undersigned assumes, without deciding, that defendant Owen was a person acting under of color of state law when she treated plaintiff. *See West v. Atkins*, 487 U.S. 42, 57 (1988) (physician who contracted with state to furnish medical services to inmates within confines of prison was acting "under color of state law for purposes of § 1983" when he treated inmate).

needlessly through a denial of medical care when relief is available has a cause of action under the Eighth Amendment against an individual whose deliberate indifference caused the suffering. Plaintiff must present evidence showing that prison officials have denied his reasonable requests for medical care when such need is obvious, and when he is susceptible to undue suffering or threat of tangible residual injury. *Byrd v. Wilson*, 701 F.2d 592, 594 (6th Cir. 1983); *Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir. 1976). *See also Estelle*, 429 U.S. at 106.

Where medical assistance has been administered, such treatment must be so "woefully inadequate as to amount to no treatment at all" in order to give rise to a cause of action under § 1983. *Westlake*, 537 F.2d at 860-61 n. 5. Allegations of negligence in diagnosing or treating medical conditions are not actionable under § 1983. *Estelle*, 429 U.S. at 106; *Byrd*, 701 F.2d at 595 n. 2; *Westlake*, 537 F.2d at 860-61 n. 5. A prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement, including proper medical care, only if "he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). Such a claim has both an objective and subjective component. *Farmer*, 511 U.S. at 834; *Wilson v. Seizer*, 501 U.S. 294, 297-300 (1991). *See also Spears*, 589 F.3d at 254.

The objective component requires that the deprivation alleged be "sufficiently serious." *Farmer*, 511 U.S. at 834 (quoting *Wilson*, 501 U.S. at 298). "[O]nly those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seizer*, 501 U.S. 294, 298 (1991) (citing *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). *See also Thompson v. County of Medina, Ohio*, 29 F.3d 238, 242 (6th Cir. 1994).

-6-

Under the subjective component, plaintiff must establish that defendant Owen acted with deliberate indifference to his serious medical needs, *Estelle*, 429 U.S. at 106; *see also Farmer*, 511 U.S. at 834; *Wilson*, 501 U.S. at 302-303, which requires evidence that defendant ignored a known risk of harm. *Farmer,* 511 U.S. at 837, 842. A prison official may be held liable for denying an inmate humane conditions of confinement only if he knows that an inmate faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. Prison officials must exhibit more than lack of due care for a prisoner's health or safety before an Eighth Amendment violation will be found. *Id.* at 835. *See also Whitley v. Albers,* 475 U.S. 312, 319 (1986). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. It is not enough that the official "should" have perceived a significant risk, but did not. *Id.* Moreover, liability will not be found where a prison official actually knew of a substantial risk of harm to an inmate if he responded reasonably to the risk, even if the harm ultimately was not averted. *Farmer*, 511 U.S. at 844. Applying these standards to the instant case, the Court concludes that plaintiff fails to establish his Eighth Amendment claim.

Plaintiff has failed to meet the objective component of the Eighth Amendment in this case. The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo County,* 390 F.3d 890, 899 (6th Cir. 2004). If, however, the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore,* 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental

-7-

effect of the delay in medical treatment." *Napier v. Madison County, Kentucky,* 238 F.3d 739, 742 (6th Cir. 2001). Unlike cases where the seriousness of the injury or illness is obvious to even a lay person, here the seriousness of the delays in treating plaintiff's alleged medical needs cannot be discerned without competent medical proof. *Blackmore*, 390 F.3d at 899.

Plaintiff argues that he should have been prescribed pain medication because he underwent reconstructive surgery of his right ankle and was previously diagnosed with a serious medical condition(s).[5] Plaintiff further states that he suffers from knee pain, muscle spasms, dry skin, gastric reflux, and allergies. However, plaintiff does not provide any current medical evidence substantiating such complaints. To the contrary, the record evidence reveals that x-rays and an MRI done in November 2005 of plaintiff's right foot showed no abnormalities. (Doc. 60, Ex. A at ¶ 9). Dr. Owen performed a chart review of plaintiff's medical file on October 9, 2008 and found that plaintiff did not suffer from any acute medical problems. (*Id.* at ¶ 10). Thereafter, Dr. Owen's examination of plaintiff on December 11, 2008 did not reveal any significant medical problems. Plaintiff also fails to provide any medical or other evidence showing that he received medical treatment or medication for his alleged medical problems following Dr. Owen's examination.[6] Without any medical evidence substantiating that plaintiff suffers from a serious

---

[5] Plaintiff asserts that his medical records from his orthopedic surgeon will show that he has had several surgeries on his right leg for previously sustained injuries which mandates treatment. (Doc. 64, p. 7). However, defendants provided plaintiff with his entire medical file on July 8, 2010. (*See* Doc. 57, Ex. A). Nonetheless, plaintiff did not provide any medical records to support this contention. More importantly, as further detailed above, Dr. Owen reviewed plaintiff's entire medical file and found no information indicating that plaintiff had any acute medical problems.

[6] Plaintiff maintains that he was treated by Dr. Morford after he was seen by Dr. Owen. (Doc. 64, p. 8). However, plaintiff fails to provide any factual information and/or medical evidence relating to his treatment with Dr. Morford.

medical condition, plaintiff fails to establish the objective component of his deliberate indifference claim.

Furthermore, with respect to the subjective component, nothing in the record demonstrates that the conduct of Dr. Owen amounts to deliberate indifference or that she was aware of conditions which posed a substantial risk of harm to plaintiff and acted with a conscious disregard for that risk. *See Farmer*, 511 U.S. at 847. Assuming Dr. Owen refused to prescribe medication which plaintiff believed he needed, plaintiff presents no evidence that Dr. Owen knew plaintiff faced a substantial risk of serious harm and ignored that risk by not prescribing medication. *Farmer,* 511 U.S. at 847. Dr. Owen's evidence indicates that plaintiff did not have any acute medical condition that required medical treatment. Plaintiff has presented no evidence creating a material issue of fact that he suffered from a medical condition such that pain medication should have been prescribed. Rather, plaintiff states generally that he suffered unduly with pain, muscle spasms, dry cracked skin, and sinus congestion as a result of Dr. Owen's failure to address any of his serious medical needs and/or prescribe plaintiff medication. (Doc. 64, Ex. A at ¶¶ 6, 7, 9, 10).[7]

Additionally, plaintiff argues that the previous results of x-rays and an MRI of his right

---

[7] Plaintiff cites the case of *Parrish v. Johnson*, 800 F.2d 600, 609-610 (6th Cir. 1986) in support of his contention that he does not have to show any actual injury to prevail in a §1983 action. However, *Parrish* did not involve an allegation of deliberate medical indifference, and the court specifically noted that different types of Eighth Amendment cases require different standards of proof. *Id.* at 610. As noted above, the U.S. Supreme Court has declared that a plaintiff must show that there is a substantial risk of serious harm to prevail on a claim of deliberate medical indifference. *Farmer*, 511 U.S. at 837. Plaintiff's reliance on *Boretti v. Wiscomb*, 930 F.2d 1150 (6th Cir. 1991) is also misplaced. In *Boretti*, an inmate, whose leg had to be amputated due to a gunshot wound, was allegedly denied clean dressings for his wound and was forced to sleep on a cement floor. *Id.* at 1152. Here, however, plaintiff's disagreement with Dr. Owen as to whether he needed certain prescriptions does not demonstrate a substantial risk of serious harm.

foot are moot, and that Dr. Owen should have ordered an MRI and/or x-rays of his right ankle and right knee. (Doc. 64, p. 7). Plaintiff further asserts that because other physicians previously prescribed medications, Dr. Owen was also required to do so. However, even if there was a difference in opinion between doctors as to whether or not a medication should be prescribed to plaintiff, this would not show deliberate medical indifference. *See Hix v. Tennessee Dep't of Corrections*, 196 Fed. Appx. 350, 357 (6th Cir. Aug. 22, 2006) (mere difference of opinions between doctors regarding diagnosis and prescribed treatment does not establish deliberate indifference).

Under these circumstances, plaintiff's evidence establishes nothing more than a difference of opinion between plaintiff and his physician as to the necessity and type of treatment required. It does not, however, constitute deliberate indifference to medical needs. *See Estelle,* 429 U.S. at 107-108; *Westlake,* 537 F.2d at 860-861 n.5. Where, as here, "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake*, 537 F.2d at 860 n. 5. At most, plaintiff may state a claim for malpractice, but "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106.

On summary judgment, plaintiff is required to present verifiable medical evidence of harm resulting from the delay and/or denial in receiving treatment for his alleged serious medical needs and that such harm was attributable to defendant Owen. Plaintiff has failed to do so in this case. Therefore, plaintiff has failed to show his claim rises to the level of a constitutional violation.

-10-

For the foregoing reasons, defendant Owen's motion for summary judgment should be granted.

## IT IS THEREFORE RECOMMENDED:

1. Defendant Owen's motion for summary judgment (Doc. 60) should be **GRANTED**.

2. The Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that for the foregoing reasons an appeal of the Court's Order would not be taken in good faith. *See McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997).

Date: 11/10/2010

Karen L. Litkovitz
United States Magistrate Judge

-11-

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

NATHANIEL C. BLACKER,                                 Case No. 1:09-cv-346

       Plaintiff,                                     Beckwith, J.
                                                      Litkovitz, M.J.

vs.

DR. JOHN R. DESMARIAS, *et al.*,

       Defendants.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **14 DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **14 DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

-12-

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Nathaniel C. Blacker
505-996
SOCF
PO Box 45699
Lucasville, OH 45699

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X ☑ Agent
☐ Addressee

B. Received by ( Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
   ☑ Certified Mail      ☐ Express Mail
   ☐ Registered          ☐ Return Receipt for Merchandise
   ☐ Insured Mail        ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
   (Transfer from service label)
   7002 3150 0000 8388 3516

PS Form 3811, August 2001        Domestic Return Receipt        102595-02-M-1540

1:09 cv 346 (Doc. 68)